UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN SERVATIUS,<br><br>　　　　　　　　　Plaintiff,<br><br>-against-<br><br>TRADER JOE'S COMPANY, CHRISTOPHER MAGUIRE, and VIVIAN WONG,<br><br>　　　　　　　　　Defendants. | Civil Action No.: 5:26-cv-138 (GTS/TWD)<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, SUSAN SERVATIUS ("Plaintiff"), by and through her attorneys, FJ Law, hereby complains about Defendants TRADER JOE'S COMPANY ("Trader Joe's"), CHRISTOPHER MAGUIRE ("Maguire"), and VIVIAN WONG ("Wong") (collectively as "Defendants"), and alleges, as follows:

**PRELIMINARY STATEMENT**

1.　For over fourteen years, Plaintiff devoted herself to Trader Joe's, rising from a "Regional Mobile Thriver" (Introductory Leadership Role) in 2009 to a "Captain" (General Manager) by 2015, through unwavering dedication and exceptional leadership.

2.　In November 2021, Plaintiff unfortunately suffered a torn meniscus in her right knee, leading to severe pain, swelling, and impaired mobility. Although Plaintiff sought medical treatment for her disability, years of steady, long work shifts – nine (9) hours or more – began to take a toll and her condition worsened over time.

3.　Making matters worse, in January 2024, Plaintiff was struck by the sudden onset of a severe gastrointestinal disability. Nevertheless, Plaintiff continued to work, doing her best to push through and manage these physical challenges.

4. By mid-January 2024, the toll on Plaintiff's body had become unbearable and she formally requested reasonable accommodations for her disabilities, namely modified breaks and flexible work hours.

5. Rather than engaging meaningfully in the interactive process, Defendants insisted she use intermittent FMLA leave and imposed burdensome requirements for medical documentation, obstructing her efforts to continue working effectively.

6. Additionally, Plaintiff's requests for reasonable accommodations to Christopher Maguire ("Maguire"), then Regional Vice President, were met with callous indifference and hostility.

7. Shockingly, Maguire outright dismissed her request. Rather than engage in any interactive process, Maguire questioned her ability to perform her job and pressured her to accept a demotion, although at all times Plaintiff could have performed her duties with reasonable accommodations.

8. Through escalating pain, Plaintiff continued to work until February 10, 2024, when she was forced to utilize protected leave to seek emergency medical care for a severe issue related to her gastrointestinal disability.

9. Upon learning Plaintiff used a sick day, Maguire further questioned her fitness for duty and imposed unreasonable demands for return-to-work documentation in retaliation.

10. On March 1, 2024, after Plaintiff submitted multiple medical notes and complied with all of Defendants' arbitrary requirements, Defendants failed to engage in an interactive process, denied her reasonable accommodations, and forced her to take intermittent FMLA leave against her wishes.

11. Then, on March 26, 2024, just over three weeks after Plaintiff utilized intermittent FMLA leave, Plaintiff was subjected to a retaliatory and discriminatory investigation, citing "employee complaints," which culminated in her suspension and eventual termination.

12. Ultimately, on April 15, 2024, after a decade and a half of faithful and dedicated service, Maguire coldly terminated Plaintiff's employment. Defendants' unlawful actions have not only cruelly stolen away Plaintiff's career, but they have caused profound emotional and economic damages.

## PARTIES

13. Plaintiff is an individual who, at all relevant times, resides in the County of Onondaga, State of New York.

14. Upon information and belief, Defendant Trader Joe's, is a foreign corporation duly authorized to conduct business in the state of New York, with a principal place of business located at 800 S. Shamrock Ave. Monrovia, California 91017.

15. Upon information and belief, Defendant Maguire is an individual residing within the State of Massachusetts. Moreover, at all times relevant, Maguire was the Regional Vice President for Trader Joe's and had direct supervisory authority over Plaintiff.

16. Upon information and belief, Maguire had the power to hire and fire employees, supervised and controlled employee schedules and conditions of employment, determined the rate and method of payment for relevant employees and/or employee salary bands or categories, including Plaintiff's, and maintained and/or managed employee records, including Plaintiff's.

17. Upon information and belief, Defendant Wong is an individual residing within the State of California. Moreover, at all times relevant, Wong was the Senior Human Resources Generalist for Trader Joe's and had direct supervisory authority over Plaintiff.

18. Upon information and belief, Wong had the power to hire and fire employees, supervised and controlled employee schedules and conditions of employment, determined the rate and method of payment for relevant employees and/or employee salary bands or categories, including Plaintiff's, and maintained and/or managed employee records, including Plaintiff's.

19. At all relevant times, Defendants met the definition of an "employer" and/or a "covered employer" under all relevant statutes.

20. At all relevant times, Plaintiff was an "employee" and/or "covered employee" of Defendants under all relevant statutes, including, but not limited to, the definition of the term under the ADA, ADEA, FMLA, NYSHRL, and NYLL.

## JURISDICTION & VENUE

21. The Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §1331 for Plaintiff's claims arising under the laws of the United States, 28 U.S.C. §§ 1332 as Defendant and Plaintiff are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides within the jurisdiction of this District and a substantial part of the events and/or omissions giving rise to this action, occurred in this district.

## PREREQUISITES

23. On or about February 7, 2025, Plaintiff filed a charge of disability and age discrimination against the Defendants with the Equal Employment Opportunity Commission ("EEOC").

24. On December 1, 2025, Plaintiff received a Notice of Right to Sue from the United States Department of Justice, Civil Rights Division.

25. Plaintiff has timely filed this Complaint within ninety (90) days of her receipt of the Notice of Right to Sue.

26. Any and all other prerequisites to the filing of this suit have been met.

## STATEMENT OF FACTS

### *Plaintiff's Employment with Defendants*

27. For over fourteen years, Plaintiff dedicated herself to Trader Joe's, beginning her journey as a regional mobile thriver (a manager who travels in support of multiple stores), on December 26, 2009.

28. Plaintiff's unwavering commitment and passion for her work were evident in every task she undertook, setting a standard of excellence for her peers. As a result, in 2014, Plaintiff was sought out and specifically tasked with opening and managing the Defendants' Syracuse store location and was promoted to store captain (general manager).

29. Throughout her tenure, Plaintiff consistently exceeded expectations, fostering growth and nurturing talent within her team. Indeed, Defendants repeatedly praised Plaintiff for her ability to transform difficult team members into valuable contributors. Indeed, Defendants rewarded Plaintiff for her efforts, including an exceptional performance review and substantial bonus in 2023.

### *Plaintiff Began Suffering Knee and Gastrointestinal Disabilities*

30. In or around November 2021, Plaintiff suffered a torn meniscus in her right knee —a painful, debilitating injury that fundamentally altered her ability to perform tasks such as

standing, walking, bending, and squatting. Plaintiff also grappled with persistent swelling in her knee, which further impaired her mobility.

31. Moreover, Plaintiff's pain and swelling would get progressively worse when she was required to stand, walk, and bend for extended periods of time. Since Plaintiff was consistently required to engage in such activities throughout her regular nine (9) – ten (10) hour shifts, it became more and more difficult to self-mitigate her symptoms.

32. Throughout the following two years, Plaintiff worked diligently to lead her store, all while fighting to overcome the sporadic flare-ups in symptoms and other obstacles presented by her disability, which was progressively worsening.

33. Sadly, on December 26, 2023, Plaintiff suffered a further tear in her knee, causing excruciating pain and swelling. Despite medical treatment and Plaintiff's attempts to self-manage, the symptoms necessitated reasonable accommodations.

34. To make matters worse, Plaintiff also began experiencing severe gastrointestinal complications. When this condition flared up, Plaintiff was unable to move around freely without experiencing excruciating abdominal pain.

### *Defendants Refused to Engage in an Interactive Process with Plaintiff*

35. On January 17, 2024, Plaintiff submitted a doctor's note to Defendant Vivian Wong ("Wong"), a then Senior Human Resources Generalist, requesting reasonable accommodations for her knee and gastrointestinal disabilities. The note read, "[u]ntil further notice, please allow Susan a modified break schedule throughout the day and the ability to shorten her day as needed based on her symptoms."

36. On January 18, 2024, Wong coldly denied the request, without any meaningful dialogue, and directed Plaintiff to take intermittent FMLA leave. Further, Wong threatened

Plaintiff her FMLA leave would be denied if she failed to provide a doctor's note specifying the frequency and duration of such leave.

37. Inasmuch as Plaintiff sought only reasonable schedule modifications, and not FMLA leave, she tried to discuss her accommodation request with Maguire. Sadly, Maguire also dismissed Plaintiff's effort altogether and, instead, chided her that every Captain is required to work nine (9) hours per day for a total of forty-five (45) hours per week, without exception.

38. Maguire further dressed-down Plaintiff, stating he had "never heard of a Captain with shortened hours or utilizing intermittent leave," and instead threatened that perhaps Plaintiff was not fit to be a Captain at Trader Joe's in light of her disabilities.

39. Maguire then peppered Plaintiff with questions like, "[a]re you able to do this job?" and "[a]re you being realistic?"

40. Shockingly, Maguire then tried to force Plaintiff to accept a demotion to Crew Member based on nothing but her requests for reasonable accommodations, protected leave and her disabilities.

41. In view of Defendants' retaliatory response to her requests for reasonable accommodation and, in particular, Maguire's harassing commentary and threats of a demotion, Plaintiff was pressured to simply work through the pain, which she did for nearly a month, and which constituted inferior terms and conditions of her employment.

*Maguire Further Retaliates Following Plaintiff's Use of Sick Leave*

42. On February 10, 2024, Plaintiff suffered a debilitating flare up of her gastrointestinal disability, which left her doubled over in pain. Plaintiff rushed to the emergency room for treatment. Naturally, Plaintiff used allotted sick time to call out from work.

43. Two days later, upon learning that Plaintiff was out sick, Maguire called to again express "disappointment" and doubts about Plaintiff's ability to serve as store Captain.

44. Bizarrely, Maguire then advised Plaintiff she would have to "prove" she was physically fit to do her job and those of all other employees in the store "in case of an apocalypse." Maguire then callously mentioned Plaintiff's husband's cancer diagnosis from the year before, suggesting she might simply prefer to stay home with him.

45. Later that day, Plaintiff visited her primary care physician regarding her gastrointestinal disability. Inasmuch as Defendants refused to provide reasonable accommodations, Plaintiff's physician advised her to take three (3) or four (4) days off from work to heal.

46. On February 18, 2024, Plaintiff notified Defendants of her intention to return to work the next day. However, Maguire quickly denied her return to work, absurdly requiring her to submit a note from her physician predicting how often the gastrointestinal flares up might occur in the future.

*Plaintiff Submitted Another Request for Reasonable Accommodations*

47. On February 20, 2024, Plaintiff submitted a further request for accommodation, again seeking a reasonable schedule modification, on the advice of her orthopedist. Plaintiff informed Defendants that her disability impaired her ability to walk, stand, bend, and squat such that her orthopedist requested that Plaintiff be limited to squatting and kneeling for 1-3 hours at a time, and a 7–9 hour workday.

48. Additionally, on February 21, 2024, and in response to Maguire's unlawful and arbitrary demand, Plaintiff submitted a "return to work" note from her primary care physician.

49. On February 22, 2024, Wong informed her that the accommodation request would not be approved until she provided more specific information from her doctor.

50. As such, on February 29, 2024, Plaintiff emailed Wong and Maguire an additional note from her orthopedist indicating Plaintiff would need to work less than "7-9 hours per shift 3-4 times a month" until she was medically cleared to proceed with a surgical intervention on her knee.

51. On March 1, 2024, Wong approved an intermittent FMLA leave for an absence of 2 hours per shift, 4 times a month. Although Plaintiff still did not want to use FMLA leave, Defendants had made it clear that this was her only option as they refused to provide the reasonable accommodations previously requested by Plaintiff. As such, Plaintiff accepted the intermittent FMLA leave.

### *Maguire Subjected Plaintiff to Harassment Based on Her Age*

52. In addition to facing discrimination and harassment based on her disabilities, Plaintiff, who is fifty-seven (57) years old, was subjected to a multitude of ageist remarks from Maguire.

53. For example, throughout Maguire's entire tenure as Plaintiff's supervisor, he consistently instructed her to try and be "more relatable to the younger crowd" and work on "understanding" the "new generation."

54. These statements were far from innocuous suggestions; rather, they underscored Maguire's clear bias against a 57-year-old Captain. Coupled with Maguire's comments about her physical condition and threats she was not fit to serve as a Captain any longer, Maguire's animus was clear and ominous reality.

### *Maguire Initiated a Retaliatory Investigation Based on Discriminatory Motives*

55. On March 26, 2024, shortly after Plaintiff began intermittent leave, Maguire informed Plaintiff that he was investigating her due to "complaints from employees."

56. Plaintiff was blindsided by these allegations, as she had previously been praised for her management of team members, particularly difficult performers.

57. For example, Plaintiff's August 2022 performance review indicated that she is "never shy to address problematic crew and does so with an organized approach." Further, in her August 2023 review, Maguire made it a point to recognize Plaintiff's "strong emphasis on crew quality" and "dedication to mate development," which had yielded "strong internally promoted mates," and for which Plaintiff received an exceptional performance review and a substantial monetary bonus.

58. Nevertheless, on April 6, 2024, Maguire suspended Plaintiff, pending the results of his investigation. However, Maguire's discriminatory and retaliatory motivations were clear to Plaintiff, who then sought help from Issac Chitica ("Chitica"), then Vice President of Human Resources. In her voicemail, and subsequent email to Chitica, Plaintiff complained about Maguire's unlawful conduct and asked for assistance. Chitica ignored Plaintiff's pleas and did nothing to intervene.

59. On April 9, 2024, just three days into the suspension, Maguire contacted Plaintiff and attempted to question her, purportedly regarding her management of employees. Plaintiff responded to Maguire's impromptu interrogation by asking him to provide her with some clarity about what information he sought, so she could be better prepared for the discussion, which Maguire agreed to do.

60. However, Maguire reached out to Plaintiff two (2) days later, on April 11, 2024, asking her to meet the next day, outside the store, next to the dumpsters and loading dock. Plaintiff advised she was not comfortable with this arrangement and reminded Maguire he had yet to respond to her requests for additional information.

61. Maguire ignored Plaintiff and still attempted to call her the next day, demanding the meeting but refusing to provide any further context. Understandably concerned and uncomfortable with what Plaintiff interpreted as both an unprofessional and bizarre request, refused the meeting but offered to meet with him in the store at another time.

62. The following day, on April 13, 2025, Plaintiff contacted Maguire and again requested information relative to their April 9th meeting. Plaintiff included Wong in the email. This time, Maguire promptly responded with the requested information and demanded that Plaintiff respond by Monday, April 15, 2023. Plaintiff complied.

63. On April 17, 2024, Maguire terminated Plaintiff's employment over the phone based on the alleged employee complaints.

64. Notably, store captains who were accused of far more egregious conduct were not terminated and, instead, given the opportunity to accept a demotion rather than immediate termination. It was clear that Maguire's sham investigation was mere pretext for the unlawful termination of Plaintiff's employment based on her disabilities and age, and retaliatory based on Plaintiff's use of sick time, requests for accommodations, FMLA leave, and complaints of unlawful conduct.

65. In the end, and while these are just some examples of the discrimination, harassment and retaliation Plaintiff endured. Defendants' actions were intended to, and did, create

a hostile work environment, replete with discrimination, retaliation and disparate treatment that no reasonable person should or would tolerate.

66. As a result of Defendants' actions, Plaintiff suffered unbearable humiliation and degradation. Plaintiff was dehumanized and left with significant emotional harm.

67. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered and continues to suffer severe emotional and physical distress.

68. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

69. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages.

**AS A FIRST CAUSE OF ACTION AGAINST DEFENDANT TRADER JOE'S COMPANY FOR DISCRIMINATION IN VIOLATION OF THE ADA**

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. 42 U.S.C. § 12112 makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to … advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (42 U.S.C. §12112(a)).

72. Further, the ADA defines discrimination against a qualified individual as not making reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability who is an employee. (42 U.S.C. §12112(b)(5)(A)).

73. At all relevant times, Defendant Trader Joe's was a covered employer under the ADA and participated in the discriminatory and unlawful conduct alleged herein.

74. At all relevant times, Plaintiff was a qualified employee, under the meaning of the ADA, and could have provided her job functions with reasonable accommodations.

75. Defendant violated the sections cited herein by creating and maintaining discriminatory working conditions, a hostile work environment, failing to provide reasonable accommodations and engage in an interactive process, and otherwise discriminating and engaging in disparate treatment against Plaintiff, because of Plaintiff's disability. Plaintiff suffered conduct that was objectively severe and/or pervasive, created an environment which Plaintiff perceived as hostile and/or abusive and created such environment because of Plaintiff's disability.

### AS A SECOND CAUSE OF ACTION AGAINST DEFENDANT TRADER JOE'S COMPANY FOR RETALIATION IN VIOLATION OF THE ADA

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77. 42 U.S.C. § 12203 prohibits an employer from discriminating, which includes retaliation, against an individual because such individual has opposed any act or practice made unlawful under the ADA (§ 12203(a)).

78. Defendant Trader Joe's violated this section by retaliating against Plaintiff because of her conduct opposing Defendants' violations of the ADA.

### AS A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS DISCRIMINATION IN VIOLATION OF THE ADEA

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. The ADEA makes it unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age. (29 U.S.C. § 623(a)).

81. At all relevant times the ADEA was in effect and binding on Defendants, Plaintiff was within the protected age group as she is over 40 years old, and Plaintiff was qualified for the position she held with Defendants.

82. Defendants violated the section cited herein by discriminating against Plaintiff because of her age and taking adverse employment actions against Plaintiff.

## AS A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
## FMLA RETALIATION

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. By the actions described above, the Defendants' actions constitute a violation of § 29 U.S.C. § 2601 et seq., The Family and Medical Leave Act, as amended, which provides, *inter alia*, that employees shall be "entitled to take reasonable leave for medical reasons..."

85. Further, § 2615(a)(1) provides that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

86. At all times relevant, Plaintiff was an eligible employee under the FMLA and was qualified and entitled to take leave under the FMLA, as she had a qualifying medical need.

87. Defendants were well-aware of Plaintiff's physical disabilities were or may have been an FMLA-qualifying circumstances.

88. By the actions described above, Defendants retaliated against Plaintiff for exercising and/or attempting to exercise her FMLA rights, which are protected activities, and Defendants took materially adverse employment action against Plaintiff in retaliation, most notably subjecting Plaintiff to a sham investigation, suspension and ultimately terminating her employment.

89. As a direct result of Defendant's conduct, Plaintiff has suffered and continues to suffer, monetary and/or economic harm, mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering for which he is entitled to an award of damages, in addition to reasonable attorney's fees and costs.

90. Defendants' unlawful actions constitute reckless, intentional, malicious, willful, and wanton violations of the FMLA.

### AS A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### DISCRIMINATION UNDER THE NYSHRL

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

92. New York State Executive Law § 296 provides:

"It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . sex, disability, . . . familial status . . . of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." (emphasis added).

93. Defendants violated the section cited herein by creating and maintaining discriminatory working conditions, a hostile work environment, failing to engage in the interactive process, failing to accommodate, and otherwise discriminating against Plaintiff because of her sex,

familial status, and disability and/or perceived disability. This culminated in her wrongful and retaliatory termination.

### AS A SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### RETALIATION UNDER THE NYSHRL

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

95. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because she has opposed any practices forbidden under this article."

96. By complaining to Defendants of harassment, discrimination, and retaliation, Plaintiff engaged in protected activities.

97. In response to Plaintiff's complaints, Defendants subjected Plaintiff to adverse employment actions, including, but not limited to, termination of her employment.

98. Accordingly, Defendants engaged in unlawful retaliatory practices by subjecting Plaintiff to adverse employment actions because of her opposition to the unlawful employment practices.

### AS AN SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### AIDING AND ABETTING DISCRIMINATION UNDER THE NYSHRL

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

100. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

101. Defendants participated in, condoned, encouraged, and approved the conduct giving rise to the unlawful conduct alleged herein, including but not limited to, discrimination, harassment, and retaliation.

102. Defendants violated the section cited herein as set forth.

### AS A EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### RETALIATION IN VIOLATION OF NEW YORK LABOR LAW § 215

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104. NYLL § 215(1)(a) provides, in pertinent part:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . (viii) because such employee has used any legally protected absence pursuant to federal, local, or state law.

105. Plaintiff utilized protected sick time pursuant to the law, which is a protected activity under the law.

106. Defendants retaliated against Plaintiff due to her protected activities by terminating her employment. As such, Defendants have violated this section of the NYLL.

107. Accordingly, Plaintiff is entitled to all appropriate relief, including but not limited to, lost compensation, back pay, front pay, liquidated damages, compensatory damages, pain and suffering, costs and attorneys' fees.

### JURY DEMAND

108. Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants as follows:

  A. Declaring that the Defendants engaged in unlawful employment practices prohibited by the ADA, ADEA, FMLA, NYSHRL, and NYLL in that Defendants discriminated and retaliated against Plaintiff on the basis of her disabilities, age, and protected activities.

  B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

  C. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, and interest, resulting from Defendants' unlawful acts and employment practices;

  D. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount to be determined at trial;

  E. Awarding Plaintiff all damages sustained as a direct and proximate result of Defendants' unlawful conduct alleged herein;

  F. Awarding Plaintiff Punitive Damages and Civil Penalties;

  G. Awarding Plaintiff all interest, attorneys' fees, costs, disbursements and expenses incurred in the prosecution of the action; and

  H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper.

Dated: January 27, 2026
    Purchase, New York

                Respectfully submitted,

                FJ LAW

                By: __/s/ Joseph Jeziorkowski___
                   Joseph Jeziorkowski, Esq.
                   Daniel Folchetti, Esq.
                   *Attorneys for Plaintiff*
                   *Susan Servatius*
                   2975 Westchester Ave. Suite 418

Purchase, New York 10577
914-730-2422
joe@fjlglaw.com
dfolchetti@fjlglaw.com